# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **PHOJI, INC.,** <br>               **Plaintiff,** <br><br>     *v.* <br><br> **ATLASSIAN, INC.,** <br>               **Defendant.** | **6:21-cv-00888-ADA** |

## MEMORANDUM OPINION AND ORDER

Came on for consideration this date is Defendant Atlassian, Inc.'s ("Atlassian's") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California filed on December 14, 2021. ECF No. 32 (the "Motion"). Plaintiff Phoji, Inc. ("Phoji") filed an opposition on March 14, 2022, ECF No. 38, to which Atlassian filed a reply on March 28, 2022, ECF No. 43. Phoji filed a sur-reply on April 12, 2022, ECF No. 51, with this Court's leave. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **GRANTS** Atlassian's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

On August 26, 2021, Phoji sued Atlassian, accusing its Confluence, Jira, and Trello products (collectively, the "Accused Products") of infringing U.S. Patent No. 9,565,149 (the "'149 patent"). ECF No. 1 at 3–7. Aided by claim charts, Phoji identifies the allegedly infringing functionalities of those Accused Products as including custom "emojis." *See also* ECF Nos. 1-2, 1-3, 1-4.

Phoji is a Delaware corporation ostensibly headquartered in Waco, Texas. ECF No. 1 ¶ 1; ECF No. 38 at 7–8. As far as the Court can tell, Phoji was a single-employee entity as of June 2021

but has slightly grown since then. *See* ECF No. 51 at 2. Atlassian is a Delaware corporation with its principal office in the San Francisco Bay area. ECF No. 1 ¶ 2; ECF No. 32 at 1–2.

On September 3, 2021, Atlassian filed its Motion under 28 U.S.C. § 1404(a), seeking transfer to the Northern District of California (the "NDCA"). ECF No. 23. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public

factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A.      Venue and Jurisdiction in the Transferor Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-

ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). A defendant does not satisfy this burden by merely consenting to jurisdiction in the transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960). And the defendant cannot, only for purposes of satisfying § 1404(a), concede that jurisdiction in the transferee forum is proper while simultaneously "maintaining that jurisdiction is legally improper in [the transferee forum] and reserving its right to seek dismissal" on that ground once transfer is complete. *Monolithic Power Sys.*, 2022 WL 958384, at *5; *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

This Court finds, and the parties do not contest, that this Action could have been brought in the NDCA. *See* ECF No. 32 at 9; *see also* ECF No. 38 at 3.

### B. Private Interest Factors

#### 1. Cost of Attendance of Willing Witnesses

The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *14 (Fed. Cir. Sep. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g., id.* at *12 ("[T]ime is a more important metric than

distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable, concluding that a witness would have to travel a significant distance regardless of whether the action is transferred or not. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at *12.

The Court holds that this factor heavily favors transfer because of the number of relevant Atlassian personnel in the NDCA.

a.      Atlassian Personnel

Atlassian argues that this factor "overwhelmingly favors transfer" because there are so many relevant witnesses in the NDCA and Australia. ECF No. 32 at 12. And, according to Atlassian, the NDCA is much more convenient for Australians than this District. *Id.* Atlassian supports its position with a raft of declarations from Atlassian personnel.



First, Josh Stevens ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ *See* ECF No. 32-1 (the "Stevens Declaration") ¶¶ 1, 5. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 6. According to Mr. Stevens, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 6. As to specific potential

witnesses, Mr. Stevens identifies members of his team, ██████████████████████████ ████████████████████████████████████████████████████████████████ *Id.* ¶¶ 10,

11. He also lists ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ *Id.*

¶ 7. He also names ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ *Id.* ¶ 8.

The Stevens Declaration also notes that ████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

*Id.* ¶ 12. ███████████████████████████████████████████ *Id.*

Second, Nathan Selvidge ████████████████████████████████████████

███████████████████████████████████████████████████████████ ECF No. 32-

2 (the "Selvidge Declaration") ¶¶ 1, 5. Mr. Selvidge ████████████████████████████

██████████████████████████████████████████████████████████████████████████████

███████████████████████ *Id.* ¶ 7. He also names a ████████████████████████████

██████████████████████████████████████████████████████████████████████████████

*Id.* ¶¶ 7–9.

Third, Ashwini Rattihalli, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ ECF No.

32-3 (the "Rattihalli Declaration") ¶¶ 1, 4. She also has experience ████████████████

██████████████████████████████████████████ *Id.* ¶ 4.

Fourth, Pavel Aksenkin ████████████████████████████████████████████[1]██

████████████████████████████████████████████████████████████████████

████████████████████████████████████ ECF No. 32-4 (the "Aksenkin Declaration") ¶¶ 1,

4. Specifically, he has ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ *Id.* The team to which Mr. Aksenskin belongs, ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 6. Mr. Aksenskin specifically identifies ████

████████████████████

Fifth, and finally, Sean Regan ████████████████████████████████████████████

████████████████████████ ECF 32-5 (the "Regan Declaration") ¶ 1. ████████████████████

████████████████████████████████████████████████████████ *See id.* ¶ 2.

According to Mr. Regan, ████████████████████████████████████████████████

████████████████████ *Id.* ¶ 3. Mr. Regan also ████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 4. ████████████████████████

████████████████████████████████████████ *Id.* ¶ 5. Mr. Regan ████████████

████████████████████████████████████████████████████████████████

████████████████████████ *Id.* The Regan Declaration also ████████████████████████

████████████████████████████████████████████████████████████████

---

[1] The Court notes that Atlassian Pty Ltd. is a non-party affiliate of Atlassian. *See* ECF No. 32-4 ¶ 1. Because Atlassian groups these witnesses under its willing witness category and Atlassian Pty Ltd. have provided a declaration in support of that factor, the Court will evaluate their convenience under the willing witness factor.

████████████████████████████████████████████████████

████████████████████     *Id.* ¶ 7.[2]

The Court finds that Atlassian's declarations establish the named witnesses as having relevant and material knowledge. And the Court is persuaded that the NDCA would be more convenient for the California and Washington-based witnesses. Phoji calls these witnesses "cherry-pick[ed]." ECF No. 38 at 10. As evidence of such selectivity, Phoji points to twenty-one Atlassian employees in this District with some connection to the Accused Products; Phoji almost certainly culled these potential witnesses from LinkedIn. *See* ECF No. 38 at 6. In reply, Atlassian provides declarations from almost all of these employees in which they aver they likely have no relevant knowledge (or make that representation on behalf of another named employee). *See* ECF No. 43 at 4. The Court finds this sufficient to rebut Phoji's contention that the people Atlassian specifically identified were "cherry-picked."

As far as the Court can tell, Atlassian did not supply declarations for a few of the employees Phoji identified, including Mr. Elliot, Ms. Jaffe, Ms. Dadeo-Winick, Mr. Boasberg, and Ms. Kathryn B. Phoji labeled these individuals as being involved with the Jira Align product. *See* ECF No. 38 at 6. Atlassian argues that, between the time Atlassian filed its Motion and Phoji served its opposition, Phoji amended its infringement contentions to include the Jira Align product— technology with roots in Austin—to manipulate the § 1404(a) analysis. *See* ECF No. 43 at 2. Atlassian posits that Jira Align never had emojis or other image capabilities and so Jira Align witnesses are irrelevant. *Id.* Phoji's sur-reply remarks how Atlassian never "disputes Phoji's

---

[2] Atlassian's motion also identifies ████████████████████████████████████████████████
████████████████████████████████████████████████████  He is, however,
too far removed from either venue to affect this factor.

infringement contention that 'Atlassian's Jira Align product integrates with Atlassian's Jira product,' which provides the basis for infringement." ECF No. 51 at 5. Atlassian has, in Phoji's estimation, sidestepped the issue. *Id.* The Court is sympathetic to Atlassian's position. Even if Jira Align infringes because of its integration with Jira, Phoji has not shown how that integration provides Jira Align personnel with any knowledge of how emojis are implemented.[3] But even if the Court found that Jira Align is properly accused, that Phoji properly included Jira Align-related personnel in its opposition, and, based only on their LinkedIn profile, that these personnel had relevant and material knowledge, the number of witnesses in the NDCA far outweighs these few Jira Align personnel in Austin.

Next, the Court denies Phoji's request that the Court diminish the weight given to the Atlassian's California-based witnesses merely because they are party personnel. ECF No. 38 at 11 (citing *SITO Mobile R&D, IP v. Hulu, LLC*, 6-20-CV-00472-ADA, 2021 WL 1166772, at *6 (W.D. Tex. Mar. 24, 2021), *vacated*, *In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021)). The Federal Circuit has roundly rejected that argument. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them."). So will this Court.

That said, the Court accords little to no weight to Australian witnesses under this factor because they will have to travel a great distance independent of the result of Atlassian's Motion. *See, e.g.*, *In re Genentech*, 566 F.3d at 1344 (suggesting European witnesses should be granted no

---

[3] The Court evaluates Mr. Elliott under the compulsory process factor since he is a *former* Atlassian employee, ECF No. 43 at 4 n.6, but grants him no weight for the same reason it rejects the relevance of Jira Align personnel under this factor.

weight); *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *9 (W.D. Tex. May 19, 2022) (according no weight to European witness); *Danmark v. Shenzhen Apaltek Co.*, No. W-21-CV-00501-ADA, 2022 WL 1445391, at *6 (W.D. Tex. May 6, 2022) (reducing weight for Danish, Chinese, and Taiwanese witnesses); *AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, at *6 (W.D. Tex. Mar. 9, 2022) (reducing weight for Israeli witnesses); *Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 WL 126490, at *4 (W.D. Tex. Jan. 12, 2022) (giving no weight to Taiwanese witnesses).

b.     Phoji's Potential Witnesses

Phoji contends that this District would be more convenient for Minnesota-based Jay Coatta and John Mikkelson, named co-inventors of the '149 patent. ECF No. 38 at 11. Mr. Coatta and Mr. Mikkelson are not Phoji employees but have submitted declarations representing that they are willing to travel to testify but would prefer to do it in Texas, owing primarily to differences in driving time and higher expenses associated with California. *See id.* at 11–12; ECF Nos. 38-3, 38-4; *see also* ECF No. 38-1 ¶ 15. The Court finds that, like the Australian witnesses, these Minnesota witnesses will have to travel substantial distance regardless of venue so their convenience is owed little weight. *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (holding that witnesses in Florida would find Texas no more convenient than California); *In re Apple*, 979 F.3d at 1342 (witnesses in New York find Texas no more convenient than California); *Kajeet*, 2022 WL 126490, at *5 (holding that witnesses in Virginia would find Texas no more convenient than California).

The Court will also evaluate the convenience of Phoji's CTO, Rick Jennings, under this factor. Mr. Jennings is the founder and owner of "CTO Teammate," a Minnesota-based technology management consulting company. ECF No. 38-2 ¶¶ 1–2. He is not Phoji's employee; he is a

10

consultant providing factional technology officer services to Phoji. *Id.* Phoji suggests that the Court should weigh Mr. Jennings under the compulsory-process factor before spending pages of its briefing arguing for why this Court can compel Mr. Jennings's testimony. *See* ECF No. 51 at 1; ECF No. 38 at 9. But Mr. Jennings will be weighed under this factor because he submitted a declaration expressing his willingness to testify. ECF No. 38-2 ¶ 6 ("I am willing and expect to be called to testify at trial, both with respect to the functionality and value of the Phoji product . . . ."). The Court finds that Texas would be moderately more convenient than California for Mr. Jennings, a Minnesotan, because of his extensive business obligations in Texas.[4] *Cf. Corrino Holdings LLC v. Expedia, Inc.*, No. 6:20-CV-309-ADA, 2022 WL 1094621, at *3 (W.D. Tex. Apr. 12, 2022) (finding that inconvenience to out-of-state witnesses would be reduced because their employer has offices in the transferee forum); *AudioEye*, 2022 WL 827805, at *7 (same); *Kajeet*, 2022 WL 126490, at *4–5 (same).

### c. Conclusion

Atlassian has successfully shown that there are several willing witnesses with relevant knowledge in the transferee district. The only witness with relevant knowledge who would bear more than a minor inconvenience were this case transferred is Phoji's Minnesota-based CTO. Accordingly, this factor heavily favors transfer.

### 2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or

---

[4] Mr. Jennings submitted an affidavit in which he testified that he frequently visits Dallas and Austin to provide consulting services to clients located there (including the Grapevine offices of Academic HealthPlans). ECF No. 38 at 9; ECF No. 38-2. Post-pandemic, he has been onsite at those Texas companies "for a week at a time roughly every 60 days." ECF No. 38-2 ¶ 5.

(b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at \*14 (W.D. Tex. Sept. 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at \*5 (Fed. Cir. Oct. 6, 2021). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at \*8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at \*3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at \*10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

a. California Witnesses

For this factor, Atlassian relies on prior art witnesses and an employee from Slack Technologies, LLC. Atlassian identifies U.S. Patent Nos. 8,909,513, 9,596,206, and 8,584,031 as "leading prior art references in Atlassian's forthcoming invalidity contentions." ECF No. 32 at 8. Atlassian claims that seven of the eight inventors of these references reside in California and "may also have relevant knowledge of any prior art systems corresponding to these patents." *Id.* at 8, 11. Phoji responds that it is merely speculative that these prior artists have any relevant knowledge. *See* ECF No. 38 at 9. Yet, by the time it filed its reply, Atlassian had served invalidity contentions mapping the prior art references to the claims of the '149 patent and attached them to its briefing. *See* ECF No. 43 at 4; ECF Nos. 43-14, 43-15, 43-16. Phoji's sur-reply did not deign to challenge the relevance of those prior art references, and the Court, having reviewed the contentions, will not gainsay the potential relevance of this prior art. *See also Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 U.S. Dist. LEXIS 85164, at *14 (W.D. Tex. May 11, 2022) (giving weight to prior artists after defendant provided charts mapping the prior art to the asserted claims). These prior artists likely have knowledge relevant to invalidity and, unlike this Court, the NDCA can almost certainly compel their testimony. These witnesses weigh in favor of transfer under this factor.

As to Slack, Atlassian remarks that Slack is "the only party who has previously litigated against [the '149] patent, and thus, has relevant information about [Slack's] licensing discussions with Phoji." ECF No. 32 at 7. These discussions led Slack to file a declaratory judgment action against Phoji. ECF No. 43 at 3; *Slack Techs., Inc. v. Phoji, Inc*., No. 3:20-cv-01509-EMC (N.D. Cal. Aug. 13, 2020). Slack is purportedly headquartered in the NDCA, as is Cyndi Wheeler, Slack's senior director of IP who engaged Phoji in licensing discussions. *See* ECF No. 32 at 7.

Atlassian also posits that Slack personnel likely have knowledge pertinent to Slack's own prior art products. *Id.*

In the Court's judgment, these witnesses weigh in favor of transfer. First, Phoji does not seek to disqualify Cyndi Wheeler as a potential witness and the Court finds that her presence in the NDCA favors transfer because: she likely has knowledge relevant to damages; and a court sitting in the NDCA can compel her testimony. Second, Phoji challenges Slack as a source of prior art, reasoning that if Slack believed it had relevant references, Slack would have sought a declaration of invalidity of the '149 patent when it filed its declaratory judgment action against Phoji in California. ECF No. 38 at 9. Atlassian replies that, "had Slack done so, it would have lost its right to file an IPR petition." ECF No. 43 at 3; *cf.* 35 U.S.C. § 315(a)(1). The Court accepts that explanation and is otherwise persuaded that a Slack product could constitute prior art. By entering licensing negotiations with Slack, Phoji signaled its belief that some Slack products read on the claims of the '149 patent—the likely relevance of the Slack products to the '149 patent is thereby established. And Atlassian has adduced evidence that Slack "had a preview release that pre-dated Phoji's claimed priority date for the '149 patent," ECF No. 32 at 8—the likely status of a Slack product as qualifying prior art is thereby established. Together, these findings establish Slack as a likely source of prior art. The Court concludes, then, that Slack, an NDCA-based company, likely employs relevant prior art witnesses that the NDCA could compel to testify.

b.    Texas Witnesses

Phoji contends that this factor cuts against transfer because a former Atlassian manager and Phoji customers reside in Texas. First, Phoji avers that Ryan Kirby, former strategic enterprise development manager for Jira Align and Trello, resides in Austin. *See* ECF No. 38 at 7. Atlassian has, however, produced a declaration from ██████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████ ECF No. 43-27 ¶ 5. Phoji has not otherwise persuaded this Court of the knowledge that Mr. Kirby possess bearing on the claims in this Action. Accordingly, Mr. Kirby will be disregarded under this factor.

Second, Phoji claims that six of its "customers" reside in Texas and each is "expected to testify at trial on issues relating to the value of the Phoji products, prototypes, which embody the patented invention." ECF No. 38 at 9. Atlassian responds, arguing that Phoji's CEO has never referred to these Texas entities as "customers" and Phoji has never actually sold them anything. ECF No. 43 at 2. In sur-reply, Phoji accedes that these companies may be "better described as prospective customers," but retorts that "Phoji developed and deployed multiple prototypes for each of these companies, [and] signed End User License Agreement with Academic HealthPlans." ECF No. 41 at 2. This Court has previously accorded no weight to customers in the transferor forum, finding it unlikely that they possessed any relevant testimony that a customer in the transferee forum would not be equally capable of giving. *See AudioEye*, 2022 WL 827805, at *4. Yet, here, it is unclear whether there are Phoji customers in the NDCA who could neutralize those in this District. This Court has also disregarded a plaintiff's customers who never bought a product embodying the claimed invention. *See Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *4 (W.D. Tex. May 19, 2022). Yet, here, Phoji has represented that it gave these Texas-based customers products embodying the '149 patent's claims. *See* ECF No. 38 at 9. The Court finds, therefore, that these customers likely have unique knowledge related to damages—like the value of the claimed invention—and potentially invalidity—including secondary indicia of nonobviousness, like commercial success.

c. Consultants

Phoji also concedes that it has a relevant witness in California. *See* ECF No. 38 at 9; ECF No. 38-1 ¶ 11. Mr. Jennings, discussed above, has a colleague at CTO Teammate, Ross Caleca, who lives in Escondido, California and "provides fractional product management services for Phoji as well as other companies." ECF No. 38-1 ¶ 11. Atlassian does not debate whether Mr. Caleca has relevant knowledge. Phoji has consistently stated that CTO Teammate personnel are not Phoji employees and there is no suggestion in the record that Phoji can obligate CTO Teammate personnel to testify. Unlike Mr. Jennings, Mr. Caleca has not indicated any willingness to testify at trial. The NDCA could, however, compel Mr. Caleca's testimony. The Court concludes, then, that Mr. Caleca's California residence favors transfer.

Phoji further refers to unnamed consultants who provided Phoji "services relating to marketing, IT and technology matters" before Phoji hired CTO Teammate. ECF No. 38-1 ¶ 13; *see* ECF No. 38 at 10. Phoji has not represented that these consultants are willing to testify, so the Court evaluates them under this factor. And they are not accorded weight under this factor because Phoji has not shown that this Court or an NDCA court wields the power to command these Minnesota or Florida-based consultants to attend trial.

d. Conclusion

Atlassian has shown that there are likely prior artists with relevant knowledge in the NDCA as well as one witness from Slack with knowledge relevant to damages. Phoji concedes that Mr. Caleca is in California and likely has relevant knowledge. Phoji has shown that its potential customers in or near this District may have relevant knowledge, though the Court must also presume, given the popularity of Atlassian's products, that there are Atlassian customers in the

transferee district that could likely provide the kind of testimony Phoji expects from Phoji's potential customers. The Court finds, therefore, that this factor favors transfer.

### 3. Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv,* 2019 U.S. Dist. LEXIS 171102, at *5. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at

434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

 The Court finds that this factor favors transfer because, though there is likely relevant evidence in Texas and California, the bulk of the relevant evidence is expected to come from Atlassian and much of its evidence is stored on servers in or near California or maintained by custodians in or near California.

   a. California-based Evidence



 Atlassian asserts that ███████████████████████████████████████████████ ███████████████████ ECF No. 32 at 9. In support, Atlassian cites the Aksenkin, Stevens, Selvidge, and Regan Declarations. Yet these declarations ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████ *See* ECF No. 32-4 ¶ 9 (Jira evidence); ECF No. 32-1 ¶ 13 (Confluence cloud evidence); ECF No. 32-2 ¶ 11 (Trello evidence); ECF No. 32-5 ¶ 6 (internal Confluence instance storing relevant marketing materials). Atlassian also points to a one-year-old declaration from █████████████████████████████████████████ *See* ECF No. 32 at 9 (citing ECF No. 32-8). ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ ECF No. 32-8. ██████████████████████████████████████████████████ ███████████████████████████████████████████████████ *Id.*

 Phoji argues that "Atlassian fails to explain why or how, with modern-day electronic storage technology, it could not conveniently produce its documents outside the NDCA." ECF No.

38 at 5. This line of reasoning flies in the face of Federal Circuit precedent. *See In re Juniper*, 14 F.4th at 1321 ("And while electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant."). So the Court will give weight to the electronic information stored on servers ███████ It also finds that the location of custodians, like the several California-based Atlassian personnel above, likely bears on the relative ease of access to sources of proof. The Court is further satisfied that Slack may have information relevant to damages and invalidity at its headquarters in California, consistent with its analysis of Slack witnesses under the previous factor.

### b. Texas-based Evidence

Phoji claims that its relevant physical documents—"patent files, corporate records, license agreements, investor information, prototypes and relating documents" and "laptops containing locally stored electronic information"—are at its headquarters in Waco, Texas. ECF No. 38 at 7–8. Atlassian asks the Court to disregard this evidence as an "apparent attempt to manipulate venue." ECF No. 32 at 10. It asserts that, since 2013, Phoji's principal office has been in Minnesota, where Phoji's President and CEO, Jon Christensen, and Phoji's CTO, Rick Jennings, reside. *Id.* at 2, 6. In Atlassian's estimation, Phoji only established its presence in Waco two months before filing this Action in order to contrive a link to this District. *Id.* at 6.

Phoji responds that it went remote in March 2020 and decided to move its headquarters in June 2020, after its offices were damages in the "unrest following the death of George Floyd." ECF No. 38 at 7. Phoji landed in Waco because of Texas's "favorable business climate in addition to tax and affordability advantages" and because of Waco's proximity to potential customers and staff. *Id.* at 7–8. Phoji secured office space in Waco for its headquarters in July 2021. *Id.* at 8. Mr. Christensen provided a declaration attesting that he resides ████████████████

████████████████ since October 2021, two months after Phoji filed this Action. ECF No. 38-1

¶ 6. ████████████████████████████████████████████████████████

ECF No. 43 at 1 n.3; *see also* ECF No. 38-1 ¶ 6 ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶ 6; ECF No. 51 at 4.

In reply, Atlassian persisted in arguing that Phoji's Waco office is a sham. According to Atlassian, "Phoji continued touting its Minnesota ties and using its Minnesota address until Atlassian filed its transfer motion, after which Phoji removed them from its website and LinkedIn page." ECF No. 32 at 1. Atlassian also adduced evidence that Phoji entered only a month-to-month lease for 135 square feet of office space in Waco. ECF No. 43 at 1. Moreover, Atlassian hired a licensed private investigator to travel to Phoji's Waco headquarters. *See* ECF No. 43-2. He knocked on the door during normal business hours on two different days in March and received no answer. *Id.* ¶ 4. The private investigator attests that a person working down the hall from Phoji's Waco office space had never seen anyone coming or going to that office. *Id.* ¶ 5. The Court will, however, disregard this statement as hearsay. *See* ECF No. 51 at 3.

Just as the Court has no reason to question the veracity of the myriad declarations attached to Atlassian's briefing, the Court sees no reason to find Mr. Christensen's declarations less-than-truthful. It is not hard to believe that Phoji would choose Waco—an affordable, central city fostering a vibrant business community—for its new headquarters. This is not a one-horse town. But it is difficult for the Court to characterize Phoji's office space as a "a place of regular business" without some evidence that someone—anyone—has been working out of that office. *In re Google*, 2022 WL 1613192, at *4. Phoji has had ample opportunity to supplement the record with such evidence. *Cf. Unification Techs. LLC v. Micron Tech., Inc.*, No. 6:20-CV-500-ADA, 2022 WL

92809, at *3 (W.D. Tex. Jan. 10, 2022) (explaining that this Court is comfortable considering facts arising after the filing of a § 1404(a) motion when evaluating transfer). Its failure to do so makes it appear as though Phoji's presence in Waco is "recent" and "ephemeral." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). Nevertheless, the Court is not prepared to find that Phoji only established a presence here "for forum selection for patent cases," or that its Waco office is a sham. *In re Google*, 2022 WL 1613192, at *4. The Court will accord the documentary evidence some slight weight relative to that owed to the evidence Atlassian is expected to produce as the accused infringer. *See In re Genentech*, 566 F.3d at 1345 ("[T]he bulk of the relevant evidence usually comes from the accused infringer . . . .").

As to Phoji's electronic evidence, Phoji is "uncertain of the exact location of its cloud-stored electronic information," ECF No. 38 at 8, and so the Court focuses on where the relevant custodians are located. It seems that many relevant custodians, including named inventors, consultants, and Phoji's CEO, are in Minnesota or otherwise remote from either forum. Mr. Christensen notes that Phoji's vice president of marketing and a part-time marketing assistant live in Texas; the Court accords any evidence they may have relevant to, for example, damages and invalidity, some weight.

c.    Conclusion

Atlassian has shown that its relevant electronic source code and documentation likely reside on servers in or near California. It has also shown that many of the relevant custodians for such documentation reside in or near California. Phoji has shown that it stores its documentary evidence in Waco and some relevant custodians live in Texas. Because the bulk of the relevant evidence is expected to come from Atlassian, the Court finds that this factor favors transfer.

#### 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This factor is neutral. This case has not yet proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor would counsel against transfer. With no other practical problems before it, this Court concludes that this factor is neutral.

## C.     Public Interest Factors

### 1.   Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit concluded in 2021 that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th at 1322. Yet this Court has reviewed more up-to-date statistics showing an appreciable difference in the time-to-trial statistics, and the Federal Circuit did not reject that finding on review. *See BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 U.S. Dist. LEXIS 35391, at *27 (W.D. Tex. Mar. 1, 2022), *vacated*, *In re Apple Inc.*, No. 2022-137, 2022 U.S. App. LEXIS 14398, at *7 (Fed. Cir. May 26, 2022). Based on those statistics, this Court finds that this factor weighs against transfer. This factor cannot, however, outweigh all the other factors. *See In re Apple*, 2022 U.S. App. LEXIS 14398, at *7.

### 2.   Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979

F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple*, 2022 U.S. App. LEXIS 14398, at *7 ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion.").

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple*, 2022 WL 1676400, at *2 (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

Atlassian asserts that "at least some of Atlassian's accused products were substantially developed in [the] NDCA," and that "gives the transferee district a greater localized interest in the

dispute and favors transfer." ECF No. 32 at 14. Phoji responds first by noting Atlassian's general presence in Texas. ECF No. 38 at 15. This Court cannot give that any great weight. *See In re Apple*, 979 F.3d at 1344. Phoji also notes that twenty-seven Texas-based Atlassian employees and only six California employees develop Confluence. ECF No. 38 at 15. This information is pulled from the release notes of a single version of Confluence and runs contrary to the Stevens Declaration, which attests that Confluence was developed and is maintained primarily in the NDCA and Sydney. *See* ECF No. 43 at 5. Phoji also remarks how Jira Align was developed in Austin. ECF No. 38 at 15. As explained above, Atlassian challenges Phoji's infringement theory as to Jira Align. *See* ECF No. 43 at 2.

Based on Atlassian's declarations regarding where Accused Products were developed and where relevant witnesses reside, the Court is persuaded that more design, development, and testing of the Accused Products occurred in the NDCA than in this District. The second public interest factor weighs in favor of the NDCA.

### 3. Familiarity of the Forum with Law-At-Issue

The parties do not dispute that this factor is neutral, and the Court agrees. ECF No. 32 at 15; ECF No. 38 at 15.

### 4. Conflict of Laws

The parties do not dispute that this factor is neutral, and the Court agrees. ECF No. 32 at 15; ECF No. 38 at 15.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs heavily in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Given the foregoing, the Court finds that Atlassian has shown that the NDCA is clearly more convenient than this Court. Atlassian's Motion is therefore **GRANTED**. The Court **ORDERS** that the above captioned case is transferred to NDCA.

SIGNED this 23rd day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE